IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MODESTO JOE PENA,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL<br><br><br>Case No. 2:20-CR-304 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion for Judgment of Acquittal. Following the conclusion of the government's presentation of the evidence in its case-in-chief, on January 11, 2023, Defendant orally moved for a judgment of acquittal on all counts under Fed. R. Crim. P. 29(a). The Court grants in part and denies in part Defendant's Motion for the reasons described herein.

I.        STANDARD

Fed. R. of Crim. P. 29(a) provides: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In considering a sufficiency of the evidence challenge, the Court must "review the evidence and its reasonable inferences in the light most favorable to the government" and "determine whether a reasonable

jury could find the defendant guilty beyond a reasonable doubt."[1] The Court must not "weigh conflicting evidence or consider witness credibility."[2]

## II.   BACKGROUND

Defendant is charged with three Counts. Count 1 charges Defendant with Conspiracy in violation of 18 U.S.C. § 371. Count 2 charges Defendant with Theft of Firearms from a Licensed Dealer in violation of 18 U.S.C. § 924(m). In relation to Count 2, the government has also charged Defendant with Aiding and Abetting in violation of 18 U.S.C. § 2(a). Count 3 charges the Defendant with Convicted Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1).

The following evidence was presented at trial in the government's case-in-chief against Defendant.

Government witness J.Y., the only known eyewitness to the alleged crime, testified that around 1:00 a.m. on April 21, 2020, he was sitting in his living room and heard a car door close. He looked out his window and saw two men who he believed had just arrived in an SUV parked on the street outside of his house, behind his truck. The men were walking on either side of his truck. He testified that one of the men appeared Polynesian and the other man appeared white or Hispanic and had pockmarks and/or scars on his face. The men appeared suspicious to him, so he went to the back of his house to retrieve a firearm. He then exited his house through the back door with his firearm and made his way up the driveway. As he did so, he heard glass break. He initially thought the two men were breaking into one of his vehicles, but as he made his way to

---

[1] *United States v. Ramos-Arenas*, 596 F.3d 783, 786 (10th Cir. 2010) (citing *United States v. Phillips*, 583 F.3d 1261, 1264 (10th Cir. 2009)).

[2] *Id.* (quoting *United States v. Castorena-Jaime*, 285 F.3d 916, 933 (10th Cir. 2002)).

the street, he noticed that glass had been broken out of the window of 1st Cash Pawn and Gun

Store ("1st Cash") located across the street. He then observed someone taking something out of

the window at 1st Cash and called out to them.

Shortly thereafter, he observed the Polynesian man walking in his direction toward the

parked SUV, at which point J.Y. pointed his firearm at the man and told him to back off. The

man complied with J.Y.'s order and continued away from J.Y. Shortly thereafter, J.Y. observed

another man carrying what appeared to be firearms in his arms and walking toward the vehicle in

which the two men had purportedly arrived. J.Y. confronted this man, pointed his gun at the

man, and told him to "back off." The man complied with J.Y.'s order. J.Y. then called the police

and informed dispatch of what he had seen. A short time later, police responded to the scene.

The government presented the testimony of Officers Doust and Calvario. Officer Doust

testified that upon responding to scene, he approached two men standing in the street in an area

near 1st Cash. One man was wearing a blue shirt and the other was wearing a white sweatshirt.

He stopped his vehicle, turned on his lights, and ordered the men to stop. The man in the blue

shirt complied with the order, but the other man fled. Officer Doust radioed to dispatch that a

suspect had fled and provided the direction the suspect was traveling.

Officer Calvario testified that he responded to Officer Doust's notice of a fleeing suspect

and headed in that direction. He saw Defendant walking in area situated in the direction Officer

Doust said the suspect had fled. The man was wearing what appeared to be a white or light

sweatshirt. Officer Calvario stopped the man and asked him to identify himself. The man stated

his name was Modesto and Officer Calvario recognized him as Modesto Pena from previous

encounters. Officer Calvario then detained Defendant and returned him to 1st Cash in the back of

a police vehicle so officers could conduct a "show up" identification with J.Y.

During J.Y.'s testimony, he stated that police officers asked him to identify two suspects that had been arrested and were detained separately in the in the back of two nearby police cars. J.Y. identified the Polynesian man he had encountered as co-defendant Sione Pututau. He identified Defendant as the other male he had seen participating in the theft at 1st Cash.

Officer Doust testified that the stolen firearms were discovered at a location disclosed by Mr. Pututau and returned to 1st Cash. The government solicited the testimony of Kevin Thompson, an employee of 1st Cash and son of the owner of 1st Cash. Mr. Thompson testified that four firearms were stolen and returned on the night in question, and he identified the four firearms presented by the government as the firearms that were stolen. One of the firearms alleged to have been stolen is a Remington Wingmaster 870 20 gauge shotgun ("Remington 870").

The government solicited the testimony of Emile Buzaid. Mr. Buzaid testified that, as part of his prior work, he had visited a Remington manufacturing plant in New York on numerous occasions and had inspected numerous Remington 870's. He further examined the Remington 870 presented by the government as the one stolen from 1st Cash and testified that it matched those that he had seen manufactured in New York.

## III.    DISCUSSION

Defendant argued at the close of the government's case-in-chief that he should be acquitted on all charges because the government failed to present any evidence establishing an interstate nexus for the four firearms identified by the government as those stolen from 1st Cash on the night at issue and, therefore, failed to meet its burden.

First, the Court concludes that the government need only establish an interstate nexus as to Count 3. Counts 1 and 2 do not include an interstate nexus requirement. As stated, Count 1

charges the Defendant with Conspiracy to violate 18 U.S.C. § 924(m), Theft of Firearms from a

Licensed Dealer, and Count 2 charges Defendant with the § 924(m) violation. Section 924(m)

states that "[a] person who steals any firearm from a . . . licensed dealer, shall be fined under this

title, imprisoned not more than 10 years, or both." "Licensed dealer" is defined by the relevant

statue as "any dealer who is licensed under the provisions of [Chapter 44, Title 18, United States

Code]."[3] The parties have stipulated that, at the time of alleged theft, "1st Cash was a duly

licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code."[4] A

"firearm" is defined as "(A) any weapon (including a starter gun) which will or is designed to or

may readily be converted to expel a projectile by the action of an explosive; (B) the frame or

receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive

device."[5] The parties have stipulated that the four firearms at issue are "firearms" as defined by

federal law.[6]

     The Court cannot find, and Defendant has not provided, any statutory or other legal

authority supporting that an interstate nexus element must be proven to establish a violation of

Section 924(m). By contrast, in *United States v. Requejo*,[7] the Tenth Circuit upheld a conviction

under 18 U.S.C. §§ 924(m) and 2(a), for the defendant's participation in robbing a pawn shop,

where evidence of an interstate nexus was not presented or discussed, but the parties stipulated

that the pawn shop was a federally licensed firearms dealer.[8] Further in support, 18 U.S.C.

---

[3] 18 U.S.C. § 921(a)(11).

[4] Docket No. 133 at 26.

[5] 18 U.S.C. § 921(a)(3).

[6] Docket No. 133 at 26.

[7] 364 F. App'x 517 (10th Cir. 2010) (unpublished).

[8] *Id.* at 520–21.

§ 922(u) makes it a crime "for a person to steal or unlawfully take or carry away from the person or the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce." Where Section 922(u) requires proof of an interstate nexus where firearms are stolen in certain circumstances, basic principles of statutory interpretation suggest that Congress did not intend to impose an interstate nexus requirement on crimes committed under 18 U.S.C. § 924(m). Even assuming Counts 1 and 2 do require proof of an interstate nexus, there is evidence to support such a finding, as will be discussed.

Second, as to the only count requiring proof of an interstate nexus—Count 3—the Court finds that the government was not required to prove that all firearms charged in Count 3 moved in interstate commerce. It is well established that "[w]hen alternative means to commit a crime are stated disjunctively in the statute and charged conjunctively in the indictment, proof of any one of the means will suffice to convict."[9] Accordingly, in meeting its burden to sustain a charge under 18 U.S.C. § 922(g)(1), the government need present sufficient evidence that Defendant possessed at least one of the firearms charged in the Indictment and that the firearm he possessed traveled in interstate commerce, along with proving the other elements. Here, the government presented the testimony of Mr. Thompson that a specific Remington 870, identified in trial, was stolen on the night in question. The government also presented the testimony of Mr. Buzaid who testified that he had been to the Remington manufacturing plant in New York, that he had seen

---

[9] *United States v. Silva*, 889 F.3d 704, 716 (10th Cir. 2018) (rejecting the defendant's argument that that his conviction under 18 U.S.C. § 922(g)(1) "should be reversed because he was charged with possession of a gun and ammunition and the Government provide only the former").

Remington 870s being manufactured in that manufacturing plant, and that the Remington 870 identified as the one stolen from 1st Cash matched those manufactured in New York. Such evidence is sufficient to establish an interstate nexus as to the Remington 870 only and survive a motion to acquit.

Lastly, though not challenged explicitly by Defendant, the Court has examined the evidence presented at trial and finds that the government has met their burden to present evidence that could reasonably sustain a conviction as to each of the Counts.

As to Count 1, the government must prove beyond a reasonable doubt that (1) the defendant agreed with at least one other person to violate 18 U.S.C. § 924(m); (2) one of the conspirators engaged in at least one overt act furthering the conspiracy's objective; (3) the defendant knew the essential objective of the conspiracy; (4) the defendant knowingly and voluntarily participated in the conspiracy; and (5) there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

 Based on the evidence presented by the government described above, the government has presented sufficient evidence on which a reasonable jury could find guilt beyond a reasonable doubt. First, Evidence of J.Y.'s eyewitness identification of Defendant as one of the males he observed on the night in question is sufficient to reasonably implicate Defendant as a participant in the theft at issue. J.Y. testified that the two men appeared together while walking around his truck, that both men were in the area between the SUV and 1st Cash around the time of the theft, and that they both appeared be attempting to get back to the SUV they purportedly arrived in after the theft occurred. Further, J.Y. testified that he saw Defendant carrying the firearms at one point and Officer Doust testified that Mr. Pututau informed the police where the

firearms were hidden, suggesting they both were involved with the stolen firearms. Lastly, Officer Doust testified that he saw two men, who he later identified as Defendant and Mr. Pututau, arguing in the general area of 1st Cash after the theft had taken place. This evidence, when viewed in the light most favorable to the government and considering all reasonable inferences, is sufficient to suggest that the two males agreed to commit the theft together.

Second, J.Y. testified that he heard a window break shortly after he saw the "suspicious" men arrive on scene and then saw one of the men taking items out of 1st Cash through the broken window. This is sufficient evidence that one of the men engaged in an overt act furthering the theft objective.

Third, J.Y.'s testimony that he observed the man he later identified as Defendant walking back toward the parked SUV carrying the firearms is sufficient evidence to support that the defendant knew the essential objective of the conspiracy.

Fourth, J.Y.'s testimony that he saw Defendant walk back toward the parked SUV carrying the firearms also suggests that he knowingly and voluntarily participated in the conspiracy.

Finally, J.Y.'s testimony that the two men arrived together and testimony regarding the men's actions on the night in question, as described above, is sufficient evidence to support that there was interdependence among the members of the conspiracy.

To prove Defendant guilty of Count 2, the government must prove beyond a reasonable doubt that (1) Defendant stole or unlawfully took or carried away at least one of the four charged firearms in this case from 1st Cash; (2) 1st Cash is a licensed dealer within the meaning of Chapter 44, Title 18, United States Code; and (3) the defendant took the firearms with the intent to permanently deprive 1st Cash of that firearm.

To find Defendant guilty of Aiding and Abetting, the government prove beyond a reasonable doubt that (1) every element of the Theft of Firearms from a Licensed Dealer was committed by someone other than Defendant; and (2) Defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about.[10]

As stated, the parties have stipulated that, at the time of the alleged crime, 1st Cash was a duly licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code and that the four firearms charged in Count II are firearms as defined by federal law. The government must therefore only present evidence supporting that Defendant stole one or more firearms from 1st Cash and did so with the intent to permanently deprive 1st Cash of those firearms; or that Defendant aided and abetted another in doing so. For substantially the same reasons set forth above, the Court finds that the government has presented sufficient evidence to sustain a conviction under Count II.

To prove the Defendant guilty of Count 3 , the government must prove beyond a reasonable doubt that (1) Defendant knowingly possessed a firearm; (2) Defendant was convicted of a crime punishable by imprisonment for a term exceeding one year (a felony) before he possessed the firearm; (3) Defendant knew he was convicted of a crime punishable by imprisonment for a term exceeding one year (a felony) before he possessed the firearm; and (4) before Defendant possessed the firearm, the firearm had moved in interstate or foreign commerce.

The parties have stipulated that, at the time of the alleged crime, Defendant had been previously convicted of a felony and that he knew he had previously been convicted of felony.

---

[10] 18 U.S.C. § 2(a).

Therefore, the government must only present evidence that Defendant knowingly possessed a firearm and that the firearm had moved at some point from one state to another or from a foreign country to the United States.

The Court has determined above that the government has presented sufficient evidence to show that Defendant possessed one or more firearms. In addition, the government has established that one of the firearms charged in the indictment—the Remington 870—traveled in interstate commerce. Therefore, the government has presented sufficient evidence on Count 3 as to the Remington 870. However, there is no evidence concerning the interstate nexus as to the remaining firearms. Therefore, the Court will dismiss those portions of Count 3 that relate to those firearms and instruct the jury not to consider them as to Count 3.

## IV.    CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Judgment of Acquittal is GRANTED IN PART AND DENIED IN PART.

DATED this 12th day of January, 2023.

BY THE COURT:

Ted Stewart
United States District Judge